UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| PRESTON R. TENSLEY and BEATA L. TENSLEY, husband and wife, | ) ) ) | NO. CV-05-0233-LRS |
| Plaintiffs, | ) ) ) | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| -vs- | ) ) | |
| CITY OF SPOKANE, WASHINGTON, ROGER BRAGDON, BRADLEY ARLETH, WILLIAM MARSHALL, LONNIE TOFSRUD, COREY TURMAN, JOHN DOE #1, JOHN DOE #2, and JANE DOE, | ) ) ) ) ) | |
| Defendants. | ) ) ) | |

BEFORE THE COURT is Defendants' Motion for Summary Judgment. (Ct. Rec. 9), which was orally argued on May 15, 2006. Richard Wall participated on behalf of the Plaintiff and Ellen O'Hara participated on behalf of the Defendants. After careful review of the pleadings submitted by all parties and with the benefit of oral argument, this order will memorialize and supplement the oral rulings of the Court on that date, which are incorporated herein by reference.

The Court finds that there are no genuine issues of material fact. Accordingly, Defendants are entitled to summary judgment as a matter of law for the reasons stated on the record, and set forth below.

///

///

ORDER - 1

**I. BACKGROUND**

This case involves a lawsuit brought by Plaintiff Preston Tensley, and his wife, Beata Tensley.  Plaintiff claims that Spokane City police officers unlawfully deprived him of his civil rights and due process of law when he was arrested and charged with several felonies.  Complaint (Ct. Rec. 1).  In addition, Mr. Tensley claims that the police officers violated the laws of the State of Washington.  *Id.*

In the early morning hours of March 24, 2005, Spokane Police officers responded to a report of vehicle prowling. In her call to 9-1-1, Connie Moran reported that she heard what sounded like someone trying to enter the basement of the home that she shared with her sister, Joyce Wicke.  She reported that the prowler might be a person named "Preston." Affidavit of Doris Stragier, Ct. Rec. 12, p. 4-12.  Ms. Moran reported that "Preston" had said that he was from the Spokane Police Department, and that he had a badge, so she let him in."  Ct. Rec. 12 at p. 6.  In the 9-1-1 tape, Ms. Moran also stated that "he was fighting with us and like trying to get us to sleep with him."  Ct. Rec. 12 at p. 8.  Police officers were dispatched to the home, checked the area, and questioned the sisters about the person named "Preston."  Detectives interviewed both Ms. Wicke and Ms. Moran.  Ms. Moran identified "Preston" as being Preston Tensley.  Ms. Moran reported to the police officers that she had been raped by Mr. Tensley. Ct. Rec. 12 at ¶ 17-18.  The sisters did not know precisely when the assault had occurred, but with the help of a calendar, they stated that the date had been March 21.  Ms. Moran also reported that Mr. Tensley drank from a Sprite can during the alleged sexual assault.  Affidavit of William Marshall, Ct. Rec. 14 at ¶¶7-12.

The sisters identified Mr. Tensley and his vehicle a black Grand Prix, which they described as a Pontiac.  Ct. Rec. 14 at ¶¶14-16.  Ms. Moran reported to detectives that Mr. Tensley had two weapons with him when she let him into the home.  Ms. Moran also stated to detectives that Mr. Tensley had pointed a gun at her sister and led her into a bedroom where she was assaulted.  Ms. Wicke initially denied having any sexual contact with Mr. Tensley, however, after being questioned about Ms. Moran's report, she told a detective that Mr. Tensley had fondled her against her will.  Ct. Rec. 14 at ¶¶16-17.  According to the record, Mr. Tensley also took Ms. Wicke with him in his car to go look for a friend.  Ct. Rec. 14 at ¶23.

With the statements of two witnesses, and corroborating evidence, the detectives had probable cause to arrest Mr. Tensley.  At approximately 2:50 p.m. on March 25, 2005, detectives went to Mr. Tensley's home and arrested him.  Search warrants were then signed by a judge for Mr. Tensley's home, and his automobile.  Affidavit of Corey Turman, Ct. Rec. 15 at ¶¶8-11.  After the search warrants were signed, detectives seized a weapon from Mr. Tensley's car, and another one from his home.  Ct. Rec. 15 at ¶21; Ct. Rec. 14 at ¶24.  Mr. Tensley was charged with first degree burglary, first degree rape, kidnaping, and criminal impersonation.  Ct. Rec. 14 at ¶24.  Also on March 25, 2005, Mr. Tensley was arraigned in Spokane County Court where television cameras were present.  During his bail setting argument, a Spokane County Prosecutor stated, "We also have information that the Defendant is affiliated with a gang, which also gives rise to community safety concerns."  Ct. Rec. 12 at p. 29.  On approximately March 29, 2005, Ms.

Moran and Ms. Wicke contacted local reporters, and recanted their stories. Ct. Rec. 12 at pp. 41-44; 53-58. On April 1, 2005, Mr. Tensley was released from custody, and the charges against him were dismissed.

**II.  STANDARDS OF LAW**

    A.  Summary Judgment Standard

    Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In ruling on a motion for summary judgment the evidence of the non-movant must be believed, and all justifiable inferences must be drawn in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1986). However, when confronted with a motion for summary judgment, a party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party must do more than simply "show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586(1986) (footnote omitted).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' "  *Id.* at 587 This court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  There is no issue for trial "unless there is sufficient evidence

favoring the non-moving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249.    Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001). "To be cognizable on summary judgment, evidence must be competent." *Id.* (quoting Fed. R. Civ. P. 56(e).

B.    42 U.S.C. § 1983 Standard.

To state a claim under 42 U.S.C. § 1983, at least two elements must be met:  (1) the defendant must be a person acting under color of state law, (2) and his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), overruled in part on other grounds, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle,* 429 U.S. 274, 286-87, (1977). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed.  The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law."    *Parratt*, 451 U.S. at 532.   That plaintiff may have suffered harm, even if due to another's negligent conduct does not in itself necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344 (1986).

**II. Plaintiff Fails to Demonstrate a Constitutional Violation**

Claims that law enforcement officers have violated a person's rights in the course of a seizure or detention are analyzed under the Fourth Amendment and its reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989). In making a search or arrest, the reasonableness requirement is satisfied by probable cause. *Brinegar v. United States*, 338 U.S. 160, 175 (1949). In Washington, probable cause for arrest exists when there is a reasonable ground for suspicion supported by circumstances sufficient to lead a cautious man to believe the suspect is guilty. *State v. Scott*, 93 Wn.2d 7, 10-11 (1980) cert denied, 446 U.S. 920. To arrest without a warrant, the officer must reasonably believe the suspect has committed, is committing, or is about to commit a felony. RCW 10.31.100. In Mr. Tensley's case, the officials had the the statements and positive identification of two witnesses, as well as corroborating evidence. Ct. Rec. 14. This Court finds that the officers had probable cause to arrest Mr. Tensley.

As stated on the record, Mr. Tensley's due process rights were not violated because all of the officers named in this lawsuit behaved reasonably in arresting Mr. Tensley. Furthermore, the officers did not violate Mr. Tensley's due process rights because they acted reasonably in executing a search warrant of Mr. Tensley's car and of his home.

In essence, Plaintiff is arguing that the officers acted negligently in believing the alleged victims. However, even assuming, arguendo, that Defendants acted negligently, Plaintiff has failed to state a constitutional claim. That Plaintiff may have suffered harm, even if due to another's negligent conduct does not in itself necessarily

demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, *supra*.   In Washington, a claim for negligent investigation is generally not recognized for a variety of policy reasons, unless the person is within the class of individuals the statute is designed to protect. *Donaldson v. City of Seattle*, 65 Wn. App. 661 (1992).

Plaintiff's claim against Police Chief Bragdon for failing to train must be dismissed. Plaintiff must establish that a failure to train amounts to deliberate indifference to the rights of the person with whom the officers come into contact. *Canton v. Harris*, 489 U.S. 378 (1989). As the Court noted on the record, there is no evidence of deliberate indifference in this case.  Moreover, liability in a § 1983 claim cannot be premised on supervisory responsibility or position.  *Monnell v. New York City Dept of Social Services*, 436 U.S. 658, 694 n. 58 (1978); *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982).

**III. Defendants Are Entitled to Qualified Immunity**

Even if there were a constitutional violation, this Court finds the Defendants are entitled to qualified immunity. Under the doctrine of qualified immunity officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  The qualified immunity standard is a generous one.  It "gives ample room for mistaken judgments" by protecting "all but the plainly incompetent or those who knowingly violate the law." *Hunter v Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).  Because day to day decisions of officials are accorded deference by the courts these

ORDER - 7

1  officials are entitled to a corresponding accommodation if a reasonable
2  error in judgment is made.  "This accommodation exists because'officials
3  should not err always on the side of caution' because they fear being
4  sued."  *Hunter*, 502 U.S. at 228.

5      The issue of qualified immunity is a question of law for the court.
6  See *Act Up!/Portland v. Bagley,* 988 F.2d 868, 873 (9th Cir. 1993).
7  Applying the standard is a two-part process.  The first question is
8  whether the law governing the official's conduct was clearly established.
9  If the relevant law was not clearly established, the official is entitled
10 to immunity from suit.  *Saucier v. Katz*, 533 U.S.194, 201 (2001).  *See*
11 *also Somers v. Thurman*, 109 F.3d 614, 617 (9th Cir. 1997), cert. denied,
12 522 U.S. 852 (1997).  If the law was clearly established, the next
13 question is whether, a reasonable official could have believed the
14 challenged conduct was lawful.  *Id.*  In this case, the officials had the
15 statements of two alleged victims and other corroborating evidence before
16 arresting Mr. Tensley.  The fact that the witnesses later recanted,
17 resulting in dismissal of the charges does not change the analysis.
18 Moreover, based on the information they had at the time, the officers
19 reasonably believed their conduct was lawful.  Under the circumstances,
20 the officers are entitled to qualified immunity.

21 **IV. Plaintiff's State Causes of Action are Also Dismissed**

22     Plaintiff also fails to state a cause of action under the laws of
23 Washington State.

24     A. False Imprisonment.

25     In Washington, probable cause for arrest exists when there is a
26 reasonable ground for suspicion supported by circumstances sufficient to

ORDER - 8

lead a cautious man to believe the suspect is guilty. *State v. Scott*, 93 Wn.2d at 10-11. To arrest without a warrant, the officer must reasonably believe the suspect has committed, is committing, or is about to commit a felony. RCW 10.31.100. This Court finds that the officers in this case acted reasonably in accordance with the law. Defendants did not commit the tort of unlawful imprisonment because the arrest was based on probable cause pursuant to RCW 9A.46.090.

B. Conversion.

Similarly, Plaintiff's claim of conversion cannot stand. Conversion is the willful interference with any chattel without lawful justification whereby any person entitled thereto is deprived possession of it. *Washington State Bank v. Medalia Health Care*, 96 Wn.App.557, 554 (1999). Defendants' interference with Mr. Tensley's land was lawful and pursuant to a search warrant. Therefore, the claim is dismissed.

C. Trespass.

In addition, Plaintiff's claim for trespass must be dismissed. The City acknowledged that it entered Mr. Tensley's property without permission. Ct. Rec. 10 at 14. However, as the Defendants correctly assert, the officials entered Mr. Tensley's property pursuant to a warrant. For these reasons, Plaintiff's claim for trespass must be dismissed.

D. Defamation.

Mr. Tensley claims that he was defamed when a county prosecutor made a statement concerning his alleged gang ties during his arraignment. To prove defamation, a plaintiff must show that the alleged tort feasor made a false and defamatory communication, that the communication was not

privileged, and that the statement was the actual cause of harm to the Plaintiff. *Moe v. Wise,* 97 Wn. App. 950, 957 (1999).   Truth is an absolute defense to defamation. *Lee v. Columbian, Inc*, 64 Wn. App. 534, 538 (1991).   In the instant case, as noted during the hearing, the alleged statement was made in Court.   Moreover, the statement was not made by any of the named Defendants or even a Spokane City employee, but instead a Spokane County prosecutor.   Therefore, Plaintiff's defamation claim must be dismissed.

Accordingly, **IT IS HEREBY ORDERED:**

1.   Defendants' Motion for Summary Judgment (Ct. Rec 9) is **GRANTED**. All of Plaintiff's claims are **DISMISSED WITH PREJUDICE.**

2.   There is insufficient evidence in the record for the Court to rule on the Defendants' Counterclaim for Malicious Prosecution; therefore, it is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED**.   The Clerk is hereby directed to file this Order, enter Judgment in favor of Defendants, furnish copies to counsel and close the file.

**DATED** this 21st day of July, 2006.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
UNITED STATES DISTRICT JUDGE

ORDER - 10